(134 So. 464)

**JEFFERSON LUMBER CO. et al. v. POWERS et al.**

6 Div. 650.

Supreme Court of Alabama.

Jan. 15, 1931.

Rehearing Denied May 21, 1931.

Harsh & Harsh, of Birmingham, and L. D. Gray, of Jasper, for appellants.

Martin, Thompson & McWhorter, of Birmingham, and Arthur Fite, of Jasper, for appellees.

**BROWN, J.**

This appeal is from a decree of the circuit court, sitting in equity, discharging the appellees from liability as indorsers on seventeen promissory notes executed by the Tishomingo Land & Lumber Company, a corporation, to the appellants, a partnership doing business as the Jefferson Lumber Company, and indorsed by the appellees Powers, Young, and Randall, representing an indebtedness of more than $50,000 for money advanced by appellants to the Tishomingo Company under a tripartite agreement between the parties, a copy of which is made Exhibit A to the bill.

The litigation was initiated by a suit at law brought by appellants against appellees, which, after plea in abatement going to the jurisdiction of the court was tried on an issue of fact and overruled, was, on the defendants' motion made under section 6489 of the Code of 1923, transferred to the equity docket, and the bill upon which the decree is rested was then filed by appellees, the defendants in the action at law.

The first contention advanced by the appellants is that the court erred in overruling their motion to strike, and in granting the motion to transfer the case to the equity docket.

The substance of the averments of the motion to transfer is that the liability of the Tishomingo Land & Lumber Company represented by said notes arose out of and under said tripartite agreement between the parties under which the plaintiffs advanced money to said Tishomingo Company to enable it to set up mills and cut and manufacture the timber on its holding into lumber, which the plaintiffs agreed and undertook to put upon the market as agents of the owner, to plaintiffs' customers; that quantities of such lumber were sold by the plaintiffs for and as the agents of said company, and, as a result, mutual and unliquidated accounts existed between the said Tishomingo Company and the plaintiffs, involving numerous and sundry

items extending over a period of two or more years, which at the commencement of the suit, and still, subsist between them, in consequence of which plaintiffs were indebted to the principal on said notes in an amount sufficient, if not to satisfy said notes in full, to greatly reduce the amount thereof; that said Tishomingo Company is insolvent, and had been adjudged a bankrupt.

■ It has been ruled here that a motion made under the statute to transfer, to meet appropriate grounds of demurrer, must state "the equitable right or defense asserted, with the same precision and certainty in averment as is required to state such right in a bill in equity" (Ex parte Holzer, 219 Ala. 431, 122 So. 421, 422), yet, in the absence of demurrer, and on motion to strike, the averments of the petition or motion to transfer will be construed most liberally, in support of the equitable right or defense, and amendable defects will be treated as made. Scholze et al. v. Steiner et al., 100 Ala. 149, 14 So. 552.

■ It appears from the tripartite agreement between the parties, attached as an exhibit to the motion, that the plaintiffs in the action at law, A. J. Gray and E. W. McKinley, doing business as Jefferson Lumber Company, designated in the agreement as "dealers" and as "parties of the first part," Tishomingo Land & Lumber Company, as "owner" and as "party of the second part," and Henry C. Powers, George W. Randall, and W. R. Young, the defendants in the action at law, designated "the sole stockholders of said corporation, as parties of the third part," were coadventurers in the business enterprises covered by the agreement. Therefore, taking as true the averments of the r.otion that at the time the suit at law was filed mutual and unliquidated accounts subsisted between the principal debtor, the Tishomingo Company, and the plaintiffs, involving a large number of transactions covering many thousands of dollars, running through a long period of time, which upon adjustment would greatly reduce the liability of Powers, Young and Randall as indorsers, in connection with the alleged insolvency of the principal debtor, the defendants in the action at law were entitled to have the cause transferred to the equity docket that they might avail themselves of an equitable set-off against their alleged liability. Scholze et al. v. Steiner et al., supra; Elledge v. Hotchkiss, 222 Ala. 129, 130 So. 893.

After the transfer of the case to the equity docket, the defendants filed the bill on which the decree granting the relief is predicated.

The bill, in addition to the equitable set-off, indicated in the motion, asserted two additional grounds on which the complainants claimed their discharge from liability:

First, that plaintiffs in the action at law, defendants in equity, and appellants here,

had violated the agreement between the parties in failing to retain out of the funds arising from the sale of lumber sold by the defendants in equity stipulated sums in reduction of the liability for advances made by them to the Tishomingo Company, which, if they had retained, would have been sufficient to discharge the liability on the notes.

The other asserted ground is that, by agreement entered into between the appellants, the payees of the notes, with Powers, one of the complainants, in consideration of the transfer by Powers to appellants of all of Powers' stock in the Tishomingo Company, Powers was discharged from liability on the notes, and this effected a discharge of all the indorsers.

The decree discharging the complainants is rested primarily on the violation of the contract by appellants in the respect above indicated, and incidentally it holds that Powers was discharged, with the effect that the other complainants were discharged pro tanto; that is, from one-third of the liabilities.

The pertinent provisions of the agreement upon which the trial court rested its major conclusion are:

"Each and every advancement made by the dealers to the owner shall be repaid with interest at the rate of 7% per annum thereon. Such advancements shall be made only on written request therefor, in each instance, *accompanied by a negotiable promissory note signed by the owner and the stockholders as the makers thereof and so drawn as to bind them in compliance with its terms to pay to the order of the dealers at the First National Bank of Birmingham, Alabama, the principal sum of said advancement* on or before six months from date (and to be once renewed if necessary) with interest as aforesaid. Ninety days after the shipment of lumber is commenced, *the owner authorizes the dealer to retain the sum of two dollars for each one thousand feet of lumber shipped or delivered, and said amount so retained shall be applied toward paying advancements made by the dealer;* but no such amount shall be so retained on account of any lumber shipped or delivered during said initial ninety-day period." (Italics supplied.)

Subsequent to the agreement from which the foregoing is taken, another agreement was entered into between the appellants and the Tishomingo Company by which the amount authorized to be retained in reduction of the indebtedness for advances made was increased to $2.75 per thousand feet of lumber sold.

■ The contention of appellees, that Powers was discharged from liability on the notes in question, was litigated on the trial of the issue presented by the defendants' plea in abatement in the action at law. At that hear-

ing before his honor, Judge Lacy, sitting as the court without a jury, on the testimony given ore tenus, the court ruled that the proof did not sustain the plea in abatement asserting such discharge. The testimony so taken, after it was reduced to writing, by agreement of the parties, was noted on the final submission of the equity suit, and constituted the bulk of the testimony touching this issue. On that hearing before his honor, Judge Blanton, the court ruled that Powers was discharged.

After due consideration, the opinion prevails here that this contention of appellees was erroneously sustained on the last hearing. It is deemed necessary to state only the controlling facts relevant to this issue, appearing from evidence undisputed.

The additional testimony touching this issue, also given ore tenus, before Judge Blanton, was in the main mere repetition by the same witnesses as that given on the trial in the law case.

At and prior to the time Powers transferred to appellants his interest in the stock held by him in the Tishomingo Company, which was then hypothecated along with the stock of Young and Randall, with the West Blocton Savings Bank as collateral securing an indebtedness of $55,000, he was engaged in the lumber business at Norris, Ala. This business had no connection with the business of the Tishomingo Land & Lumber Company, and was no part of the joint adventure. Powers, in the prosecution of his lumber business at Norris, had become indebted to appellants in the sum of ›$28,000, and in the transaction between Powers and McKinley acting for the Jefferson Lumber Company, in which the stock of Powers was acquired by the appellants, the personal indebtedness of Powers only was mentioned. The agreement between the parties resulting in the transfer of the stock by Powers was not reduced to writing, but, concurrently with the purchase of the stock, the Jefferson Lumber Company delivered to Powers a written option to repurchase, expressed in these words: "Dear Sir: For value received in the sum of one dollar, the receipt of which is hereby acknowledged, we hereby give Henry C. Powers option on stock in Tishomingo Land & Lumber Company, Certificates #1 and #2, for one hundred and thirty shares each, total two hundred and sixty shares, *when indebtedness of Henry C. Powers* to Jefferson Lumber Company is satisfied in full. (Signed) Jefferson Lumber Company, by E. W. McKinley." (Italics supplied.)

The testimony of McKinley and Gray is clear to the point that in this transaction the personal indebtedness of Powers only was considered. Opposed to this is the equivocal testimony of Powers, corroborating that of McKinley and Gray, that the notes in suit were not mentioned, but that he "understood it included all indebtedness"; and that of the witness Lewis who was in an adjoining room, who testified that all he heard and understood in the negotiation between McKinley and Powers was "all indebtedness."

The par value of Powers' stock was $26,000; as before stated, it was pledged along with the stock of Randall and Young to the bank to secure an indebtedness of $55,000. The undisputed evidence is to the effect that the corporation, though supposed to possess valuable timber rights, was always in financial distress, and was continually procuring advances to meet its pay rolls and other current obligations.

These circumstances tax credulity too heavily to accept the conclusion that appellants, in addition to releasing Powers from an admitted obligation greater than the par value of the stock, also release him from liability on the notes in suit.

■ The principle announced in First National Bank v. Fidelity & Deposit Company, 145 Ala. 335, 40 So. 415, 417, 5 L. R. A. (N. S.) 418, 117 Am. St. Rep. 45, 8 Ann. Cas. 241, "upholding the right of a surety to stand upon the agreement, with reference to which he entered into his contract of suretyship, and to exact compliance with its stipulations," is firmly settled in the law, and its effect when applicable is to relieve the surety from liability if there is a material alteration or breach of the contract by the other parties thereto. Alabama Fidelity & Casualty Co. v. Alabama Fuel & Iron Co., 190 Ala. 397, 67 So. 318; Prairie State Nat. Bank v. United States, 164 U. S. 227, 237, 17 S. Ct. 142, 41 L. Ed. 412.

■ This principle, however, is not thought to be applicable in the instant case. Construing the obligation arising from the indorsements of the notes in suit, in connection with the provisions of the tripartite agreement under which they were executed, Powers, Randall, and Young were not indorsers or sureties in the strict sense. They undertook and agreed, not to indorse notes executed for advances of money made by appellants to the Tishomingo Land & Lumber Company to aid it in the prosecution of the joint adventure, but that said notes should be signed by the corporation and the appellees "as the makers thereof."

■ Whatever may have been the rule applicable in the action at law, equity looks to substance rather than form, and regards that as done which ought to have been done. McCaa, Adm'x, v. Woolf et al. Ex'rs, 42 Ala. 389; Hughes & Tidwell Supply Co. v. Carr et al., 203 Ala. 469, 83 So. 472; 21 C. J. 200, § 190.

Therefore, construing the notes in connection with the written agreement of the parties

under which the advances were made and the notes given, the appellees are to be treated in equity as comakers with the Tishomingo Land & Lumber Company, and the question of their liability adjudged accordingly.

■ It is not doubted that the stated maxim "cannot be invoked to create a right contrary to the agreement of the parties, or in disregard of essential conditions for which the parties have stipulated." 21 C. J. 201, § 191.

■ The stipulation invoked by appellees to relieve them from liability is, "Ninety days after the shipment of lumber is commenced, the owner *authorizes* the dealer to retain the sum of two dollars for each one thousand feet of lumber shipped or delivered, and said amount so retained shall be applied toward advances made by the dealer." (Italics supplied.)

At the time the advances represented by the notes sued on were made, and for some time thereafter, Powers, Young, and Randall owned all the stock in the Tishomingo Company, constituted the board of directors and officers of the corporation. They were interested as such in developing the business of the corporation and placing the products of its holding on the market. The evidence shows that the corporation was constantly in financial distress, and required more money than it secured from the sales of its products to meet its obligations.

And, even after the appellants acquired the equity in Powers' stock, and were recognized as stockholders, along with Randall and Young, Randall and Young constituted the majority, both in stock and as directors, and held the power of control.

Appellants offered testimony to the effect that Powers, who was president of the corporation before he was let out, requested appellants not to retain the stipulated sums, and that, after Powers sold his stock, Young and Randall made the same request. This is disputed by Randall and Young. Regardless of this dispute in the testimony, Powers, Randall, and Young, during Powers' incumbency, were stockholders and officers receiving the benefit of the payment of the full proceeds, and enabled the corporation to better carry on. So with Randall and Young after Powers was displaced by McKinley. The stipulation was not mandatory, and the conclusion is irresistible that appellees are in no position to assert that they have been discharged, though it be conceded that this was a technical breach of the stipulation. Their liability was not increased, and they acquiesced in order that, in the conduct of the business of the corporation, it might have the full proceeds of the sales of its products to enable it to carry on. 31 C. J. 444, § 42, and authorities, note 46.

■ That is not to say they were not entitled to a credit on the notes for the amounts actually retained under this stipulation in the contract, as shown by the books of the appellant, Jefferson Lumber Company, and the effect of this evidence is not destroyed by the testimony of the bookkeeper that this was a mere matter of bookkeeping.

■ There is another feature of the case that is not dealt with in the decree, for the reason, no doubt, it could not affect the result. There is evidence showing that the appellants took over lumber shipped by the Tishomingo Company to the Tennessee Coal, Iron & Railroad Company, on their order, which was resold by them at a profit, and, according to appellees' contention, amounted to considerably more than $5,000; but the evidence also shows that said Tishomingo Land & Lumber Company was indebted to appellants on open account—not covered by the notes—for advances made in large sums, to wit, nearly $40,000. The complainants-appellees show no special right or equity which necessitates the application of such profits in discharge of their liability, and they were not available to appellees as an equitable set-off, unless such profits exceeded the indebtedness due on the open account.

After submission for final decree, the appellants offered an amendment to their answer, claiming the sum of $10,000 due by note executed by the Tishomingo Land & Lumber Company, and indorsed by Young and Randall, for money advanced under said tripartite agreement in aid of the joint adventure. This amendment was denied on the ground, not that it was presented after submission, but because "it did not set up any matter connected with or growing out of the subject matter of the bill."

■ The only matter that gives the bill equity, under the facts, is an accounting in respect to the joint adventure. The notes, the subject-matter of the amendment, were a liability arising out of the adventure, and, whatever may be said of the ruling of the court denying the amendment, if offered after remandment, it should be allowed. Equity delights to do justice and not by halves (21 C. J. 198, § 187), and its decrees will be so moulded as to protect the rights of all parties. In view of the offer of complainants in the bill to do equity, there was no necessity for a cross-bill. The waiver of exemptions and claim of attorney's fees were properly asserted in the answer and cross-bill, and the defendants are entitled to have the amount of their claim ascertained and adjudged on the accounting, and the cross-bill, though it asserted a legal demand, was appropriate to affirmative relief. Ashe-Carson Co. v. Bonifay et al., 147 Ala. 376, 41 So. 816; Davis et al. v. Anderson, 218 Ala. 557, 119 So. 670.

For the errors noted, the decree of the circuit court is reversed, and a decree here rendered denying the complainants relief on the ground that Powers was discharged from his obligation, and also on the ground that the defendants breached the agreement in failing to retain the stipulated sum specified in the contract, and the cause is remanded for further procedure, not inconsistent with this opinion.

Reversed, rendered, and remanded.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.